## ORTIZ *v.* PABÓN.

APELACIÓN procedente de la Corte de Distrito de Mayagüez.

No. 33.—Resuelto en mayo 5, 1904.

TESTAMENTO—OTORGAMIENTO.—En los casos en que el testador se hallare en peligro inminente de muerte, puede otorgarse el testamento ante cinco testigos idóneos, sin necesidad de que sea autorizado por notario alguno.

ID.—Otorgado un testamento ante cinco testigos, por encontrarse el testador en peligro inminente de muerte, si apareciere manifiesto el propósito deliberado del testador, de otorgar su última disposición, y que esto tuvo lugar en un solo acto y sin interrupción alguna, habiendo los testigos oído lo consignado en el testamento, de boca del testador, el testamento debe declararse válido.

ID.—NULIDAD DE TESTAMENTOS—DIVISIÓN DE HERENCIA—BIENES RESERVABLES.—En un juicio sobre nulidad de un testamento no pueden discutirse cuestiones relativas a la división de la herencia y al carácter de reservables de algunos de los bienes de la misma.

COSTAS.—Las costas deben imponerse a la parte cuyas pretensiones sean absolutamente desestimadas.(*)

### EXPOSICIÓN DEL CASO.

En el juicio seguido ante el Tribunal de Distrito de Mayagüez por Don Higinio y Doña Rosario Ortiz del Toro, contra Doña Tomasa Pabón, por sí y en representación de sus menores hijos, sobre nulidad de una cédula testamentaria, cuyo juicio pende ante nos a virtud de recurso de casación, hoy de apelación, interpuesto por los demandantes contra la sentencia del expresado tribunal, habiendo llevado la representación del Don Higinio, ante esta Corte Suprema, el Letrado Don José Ramón Freyre, y la de Doña Rosario el Letrado Don Manuel F. Rossy, sin que haya comparecido la parte recurrida.

*Resultando:* que la expresada sentencia, dictada en 31 de marzo de 1902, copiada a la letra dice así:

"*Sentencia.* En la ciudad de Mayagüez, a 31 de marzo de 1902. Vistos en juicio oral y público los presentes autos declarativos seguidos ante este tribunal, entre partes, de la una Don Higinio y Doña Rosario Ortiz del Toro, representados y defendidos por el Letrado Don José

Ramón Freyre, como demandante; y de la otra, Doña Tomasa Pabón, por sí y en representación de sus menores hijos, representada y defendida por el Letrado Don Juan Quintero, como demandados; sobre nulidad de la cédula testamentaria otorgada por Don Salomón Ortiz.

"1. *Resultando:* que la parte actora que pretente la nulidad, funda su demanda en que Don Salomón Ortiz falleció casi repentinamente en 1 de julio de 1901, a consecuencia de los ataques de apoplegía que venía padeciendo y que empezaron en el año de 1897, descomponiéndole su razón y quedando en completo estado de parálisis, abandonándose en todos sus negocios, siendo asistido en su enfermedad por el Dr. Don Pablo Hernández, que expidió certificación acerca de su estado, y que, después de la muerte, apareció una cédula testamentaria otorgada ante cinco testigos, Justo Cardosa, José Nieves Bobé, Tomás Carlo y Don Vicente Arroyo, firmando el documento, a ruego del testador, Don José Ramón Quiñones, cuya cédula se protocoló en 14 de septiembre de 1900, en la Notaría de Don Alfredo Arnaldo, promoviendo la viuda Doña Tomasa Pabón el juicio de testamentaría, interviniendo los bienes y nombrándosele depositaria; consignándose (*) el hecho de que Don Salomón Ortiz no practicó la testamentaría de su primera esposa ni entregó a los herederos la parte hereditaria de aquella procedencia, y que posteriormente contrajo segundas nupcias con Doña Tomasa Pabón, con la que ha procreado varios hijos; alegando, en cuanto a los fundamentos de derecho, que para ser válido un testamento ante cinco testigos se necesita que el testador se halle en peligro inminente de muerte; que el testador Ortiz no podía otorgar testamento por habérsele entorpecido sus facultades intelectuales y no estaba en cabal juicio; que con el testamento se han defraudado los bienes de los demandantes, y el testamento con fraude es nulo, y que el testador no podía disponer de los bienes que heredó de los hijos del primer matrimonio estando obligado a reservarlos en favor de los otros.

"2. *Resultando:* que conferido traslado a la parte demandada, lo evacuó solicitando se declarase sin lugar la demanda, con las costas al actor por no ser cierto que la herencia que a Don Salomón correspondió de sus hijos pertenezca sólo a los demandantes, porque la testamentaría de la primera esposa de Don Salomón se practicó cobrando todos los herederos su participación y debiéndosele sólo a Don Higinio 15 pesos; que si es verdad que Don Salomón sufrió una enfermedad, a pesar de ella gozaba de su cabal juicio y administraba sus bienes por cuenta propia, otorgándose la cédula con las formalidades legales,

y que si la demandada se encuentra en posesión de los bienes es por habérsele nombrado administradora en la junta celebrada, para la que fué citado el letrado de los demandantes.

"3. *Resultando:* que convocadas las partes a comparecencia para proponer pruebas, formularon toda la que les interesó, que fué admitida, trayéndose certificaciones de varios notarios, de no existir archivada la testamentaría de Doña Eduvigis del Toro ni otorgado cesión de derechos y acciones por los herederos de ésta; certificación folio 49 de que siempre figuró como contribuyente Don Salomón Ortiz por una finca rústica en el barrio de Pedernales de Cabo Rojo; certificación folio 51 sobre el nombramiento de administradora de los bienes a favor de Doña Tomasa Pabón en la junta para que fué citado el letrado de los demandantes, certificación folio 52, que comprende la cédula testamentaria de Don Salomón Ortiz y diligencias sobre aprobación y protocolación de ellas y que en el acto del juicio (*) oral declararon los testigos presentados por las partes sobre los extremos propuestos por ellas, votándose en público la sentencia en el día y hora señalado.

"4. *Resultando:* que en la sustanciación de estos autos se han observado las prescripciones legales.    Siendo Ponente el Sr. Juez Presidente, Don Arturo Aponte y Rodríguez.

"1. *Considerando:* que cuando el testador se hallare en peligro inminente de muerte, puede otorgarse el testamento ante cinco testigos idóneos, sin necesidad de notario, según el artículo 700 del Código Civil, y de las actuaciones se desprende que Don Salomón Ortiz por la enfermedad que padecía, se encontraba en peligro de muerte por no demostrarse lo contrario.

"2. *Considerando:* que el estado del testador, que se alega por la parte demandante como consecuencia de la enfermedad que venía padeciendo y que le había entorpecido sus facultades intelectuales, no se demuestra en forma ni manera alguna, pues sólo se arguye que el facultativo que le asistió había certificado sobre aquel estado, y ese mismo facultativo en el acto del juicio oral se limita a expresar que en una sola ocasión asistió al Sr. Ortiz, que sufrió un ataque apoplético en el año de 1894, dando las prescripciones necesarias, sin poder asegurar que Don Salomón quedara perturbado de sus facultades mentales, pero que otros que han sufrido iguales ataques, y vivido después algunos años, pueden quedar en su sano juicio por haberlo comprobado en la práctica.

"3. *Considerando:* que en el otorgamiento del testamento concurrieron los testigos exigidos por la ley, con las cualidades que la

misma establece, por lo que el tribunal declaró testamento lo que de esas declaraciones resultara; y si bien en el acto del juicio esos mismos testigos incurrieron en pequeñas contradicciones, no fueron sustanciales sobre el propósito deliberado del testador de hacer su última disposición, de pasar en un solo acto sin interrupción y oirlo todo de boca del testador, único caso en que podía apreciarse la ineficacia del testamento; y en cuanto a la vecindad de los testigos, consta de las diligencias de aprobación que eran vecinos de Cabo Rojo, sin que la parte demandante tratara de justificar lo contrario.

"4. *Considerando:* que las demás alegaciones de la parte actora sobre división de la herencia de la primera consorte de Don Salomón y entrega de la parte correspondiente a sus hijos y en cuanto el carácter (*) de reservables de algunos de los bienes de esa herencia, no son de influencia alguna para la validez o nó del testamento y sólo objeto de reclamaciones por separado y en el correspondiente juicio.

"5. *Considerando:* que las costas se impondrán siempre a la parte cuyas pretensiones se desestimen totalmente.

"*Vistos* los artículos 700 y demás de aplicación del Código Civil y la Orden General 118, serie de 1899.

"*Fallamos:* que debemos declarar y declaramos sin lugar la presente demanda, absolviendo de ella a la parte demandada, con las costas a cargo de los demandantes. Así por ésta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos. Arturo Aponte, Luis Méndez Vaz, R. Roura."

*Resultando:* que contra esta sentencia interpuso recurso de casación la representación de Don Higinio y Doña Rosario Ortiz, el que les fué admitido; y elevados los autos a esta Corte Suprema, previa citación y emplazamiento de las partes, se tramitó dicho recurso como de apelación, a virtud de lo dispuesto por la Ley de la Asamblea Legislativa de 12 de abril del año próximo pasado, señalándose día para la vista, que tuvo lugar con asistencia del letrado del apelante Don Higinio Ortiz, sin que asistiera a ese acto la otra apelante, ni se personara ante esta corte la parte recurrida.

Abogados de los apelantes: *Sres. Freyre* y *Manuel F. Rossy.*

La parte apelada no compareció.

EL JUEZ ASOCIADO SR. SULZBACHER, despúes de exponer los hechos anteriores, emitió la opinión del tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada.

*Fallamos:* que debemos confirmar y confirmamos la sentencia que dictó el Tribunal de Distrito de Mayagüez en 31 de marzo de 1902, con las costas del recurso a cargo de los apelantes, y devuélvanse los autos al referido tribunal con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Figueras y MacLeary.(*)